I wish good morning to the court my name is George Fisher and I represent the plaintiff in this case my comments in anticipating being before you prompts me to ask the court to consider the application of the Hernandez case in terms of the legitimacy of the 60-day policy utilized by the defendant our argument is is that the Hernandez case does not apply in this circumstance the reason being that the facts in Hernandez leads and allows the conclusion that a drug-seeking former employee would not be a burden an employer should have to take on as being in some way compliant with the ADA the circumstances in the present case don't come anywhere near that kind of question these parties have known each other for many many years and they know what the qualifications were of Mr. Snapp they knew and had his medical records so they knew exactly what was going on in his life and when he finally began to get treatment and was released by a doctor to return to work the 60-day rule was invoked by the defendant. What happened here seems like a very peculiar case because he had been on long-term disability it's my understanding and then Cigna I think is at the time was providing the coverage wanted him to come in to take a test I guess to determine if he should continue on long-term disability he decided he didn't want to take the test so then he was terminated from the long-term disability benefits it appears and I don't understand why but neither Mr. Snapp nor Cigna there seemed to be a terrible lack of communication it appears that both failed to inform Burlington Northern and so for like two years he's in this kind of inactive status once I guess he Burlington Northern finds out I think a communication was sent and then he waits until like the day before a decision has to be made and then says he wants to try to assume some sort of position and is now saying that the company didn't follow its procedure which normally it would follow if it had been notified of this. Is this correct or am I wrong? I would have some some comments in response I don't think that. I'm trying to figure out is he claiming discrimination based on the fact that they didn't engage in this interactive process or just just in general that somehow they discriminated against him for some other reason if so what's the I'd like to know what your position is on that where is the evidence of the discrimination? I think that well first of all the first fact that you mentioned that he refused to take a test and so forth that was several years prior to the conduct that prompts this complaint so I wouldn't suggest to the court that they consider that fact as being controlling in its analysis today. In answer to your question your direct question about what is this case about that's why I mentioned the word Hernandez is that policy and its legitimacy is what the court has to decide. Counselor I have a question too. Your client was on disability for a period of time and then was taken off disability and he was off disability for quite a long time before the events in question happened. Am I right so far? Yes. Okay so was he taken off disability because he was no longer disabled and if that's so how could we conclude that there is an issue of fact about disability discrimination if he was no longer disabled? The decision about his getting benefits and the point in which they were cut off was consequent to the Cigna operation deciding that he no longer fit its definition of his being disabled and that was the reason that he was his coverage was okay. So the insurer said he's not disabled and by seeking to come back to work was he also signaling that he was not disabled any longer but was capable of performing any work? Yes to that comment he did have an independent medical release to return to work. Okay so if everyone including his own physician whoever it was and the insurance company all had concluded that he was no longer disabled why is there disability discrimination or an issue of fact regarding disability discrimination that's the linkage that I'm missing. I would challenge your characterization that everybody thought he was he was still disabled. No no not not disabled that's my point exactly the insurance company said you're a hundred percent able you're in great shape and his doctor said you're able to work and so as far as this employer was told he was fully able to work with no disability remaining and my question to you is if he was not a person with a disability why isn't summary judgment appropriate on the ground that he had no disability to be discriminated against? Well I think that I understand what you're saying I don't think I agree with everything you said but the main my main response is is that the circumstance you're defining is defining the pretextural argument that Mr. Snap must make at this point and which he never got the opportunity to do. But you don't reach pretext unless you establish you know a right to a claim and the first element is Judge Graber says is that he's disabled now. Or perceived as disabled but what evidence is there? What in the evidence supports that position that that that the plaintiff is a disabled person under the ADA? At the time that he was given the release that he did receive. What does that mean? When he was terminated that's the question at the time of the termination that you're complaining about you're complaining that he was terminated because on day 59 he tried of a 60-day period he tried to take a job for which he wasn't qualified because he wasn't in the Union. So that's what you're complaining about he was terminated under the 60-day rule. Was he disabled? What is the evidence that he was disabled at that moment or that the employer perceived him to be? Because his release to work by his doctor specifically said that he was not clean and without illness or need of accommodation. It was very specific. That is Dr. DeBoudreau release and it was very narrowly drawn. Let me put it this way. What do you contend is the plaintiff's disability under the ADA and what evidence is there to support the existence of that disability? Exactly what I just spoke to. What's a disability? You still haven't said that. The disability is the possibility that he could not work the hours. The possibility that he couldn't work? That's not a disability. Well if I may the defendants you know accelerated this process and we're saying that that process that states your concern presumes that there was some exchange going on between the parties when in fact there was not. So Mr. Snapp was left... Maybe there wasn't because the employer had no reason to believe he was disabled. That's what I'm trying to find out. What evidence in the record is there of a disability? What is the disability first of all? Well the disability was his sleep apnea and that was causing you know major problems with his being able to conduct his job. Judge Graber just went through all the record shows that maybe that was true years ago but there's no evidence that it exists at the time you know of his termination. I think the message of the releasing doctor is what controls in response to your concern. But what's the message of the releasing doctor? I thought the message of the releasing doctor that was kind of struggling. It's in the documents. It's at page 135 of the well I can't tell it's got three page numbers 405, 65 and 135. It does it does refer to his sleep apnea and suggests that he should have office work so that's what you're relying on? Yes it is. So what's the evidence of discrimination but I guess I mean if we assume that he still had apnea which let's go ahead and do that what's where's the evidence of the discrimination by the company? Well that's where I started my comments with a Hernandez case you know because I'm saying that the policy that they are relying on the 60-day rule is unenforceable on given the facts in the law that applies in this case that they should have they knew like I said they've known each other for a long time they know all about him he's given a release to come to work and they turn their backs and say we've got this this policy that we're going to enforce and have a nice have a nice life. Counselor you've exceeded your time but we used a lot of it with questions and you may have some much right. Thank you. Good morning your honors may it please the court I am Brittany Pierce and with me is my law partner Jim Shaker here on behalf of the Apelli BNSF Burlington Northern Santa Fe Railway. I've just heard this panel ask about what is the evidence what is the reason that we should reverse Judge Layton's ruling? Counsel I have I gave your opponent a hard time but I'm going to give you a little bit of a hard time too because I just speaking for myself I don't have any difficulty with the neutrality of the 60-day rule but my concern is the breadth of the requirement to engage in an interactive process under the ADA and it would appear to me at least that the letter from Dr. Boudreau could be read to be seeking an accommodation because it says well you still have sleep apnea you can go back to work but you shouldn't be working at night and dangerous where you could be with dangerous machinery and so on and so forth and why isn't that enough of a trigger to require engaging in an interactive process? He first asked for a job he asked for time off to deal with medical issues and he comes back with something that seems to suggest that he needs some sort of accommodation. Your Honor I don't think that the letter does request accommodation I think what it was was an add-on to an improper application to meet the 60-day return to work requirement. The policy says you have 60 days to come back and find a job. The two days before that 60-day period ended he applied for a job for which he was wholly ineligible. I understand that but the ADA would if you were acting inconsistently with it would trump your policy and there I have not seen in any of the reasonable accommodation request cases a specific time limit that says if you ask for it just one or two days before whatever your deadline is it doesn't count. So I'm still struggling with why his request for medical time off combined with the return to work letter saying you may not be able to do the full range of work, why that scenario doesn't trigger the need for reasonable accommodation at least at the summary judgment stage. I mean you could easily win the lawsuit who knows but why is summary judgment improper on that aspect of the case? Your Honor I don't think that the parties reached the point of reasonable accommodation at all. The letter as presented to BNSF from Dr. Boudreaux was not requesting accommodation for a particular position anything like that. What it said was... Is that a requirement of the ADA that you only get a discussion of reasonable accommodation if you pinpoint a specific job as opposed to say I'm ready to come back to work but I have some limits? It's not a specific requirement of the ADA but similarly the ADA doesn't stretch on indefinitely. Mr. Snapp had been eligible to come back to work since 2005. He did absolutely nothing, applied for no job, requested no accommodation, made zero contact with BNSF related to this matter whatsoever. But then you told him he had 60 days and he asked for this within the 60 days. Well out of an application did give him 60 additional days. Under the policy it could have said you knew that you had 60 days, you never applied, in fact years later we're now giving you yet another opportunity. But the opportunity that Mr. Snapp tried to take was something he could never fulfill anyway and then trying to say that he should get some type of accommodation was really just a pretext for trying to come in at the 11th hour... Why isn't that all a factual issue for a fact as to whether either party or both parties were acting reasonably in the circumstances? None of these facts are in dispute. The parties have generally agreed on all of the facts. They were presented to Judge Layton... And one of those, well we have to know her review, but one of those facts is that you had these materials in hand and did not engage in an interactive process to things were available to him. There's nothing in the record about an attempt to discuss those potential opportunities. Your Honor, reasonable accommodation requires three things and that's what they're trying to claim here. That he's disabled under the ADA, which has already been discussed this morning, that there might not even be a disability based on what has been said. But you know I look all through your brief, you don't seem to challenge that he's disabled, do you? We have not challenged that. Okay, so that's a given. If there is one... Well you haven't assumed that it's a given in the case at this point. He still doesn't meet the other two elements that are necessary to examine when looking at reasonable accommodation. Whether he's a qualified individual, capable of performing the essential functions of his job, and whether he was terminated because of his disability. But that has nothing to do with the requirements for the interactive process. That's all I'm asking you about. Why didn't it trigger a need for an interactive process under the Barnett Rule that the Supreme Court has established? Your Honor, the interactive process was never requested, was never claimed in this case. It was simply, I want to come in and take this particular job which I am totally qualified to take. That is what Mr. Snap claimed. Let me back up just a little bit. I want to just ask you a couple questions about this February 1st letter from Dr. Boudreau. Yes. First of all, you call, characterize it as a follow-up letter, right? I think you said that earlier. Yes. Follow-up to what? Is that in the record? The letter it's a follow-up to? I meant a follow-up letter to his application for a job. It was related to coming back and trying to meet the 60-day requirement to return to work on the notice. So this is a, well, when did Burlington Northern get this letter? Is it in the record? February 29th, I believe it was attached to his application for a job. February what? 29th. Okay. It was a leap year. Yes. February 29th was within the 60-day period, right? It was the So your position is that this letter alone is not sufficient to be construed as a request for an accommodation? No, I don't believe it is. And if you look at Snap's, Mr. Snap's letter of February 28th, which is the one where he has requested work, he has requested a position for which he is entirely ineligible. And yes, I understand that he has sent along the physician release, which wasn't closed from Dr. Boudreau, but these aren't requesting an interactive process, any type of accommodation. What they're requesting is, hey, I want to come back, displace someone for which I have no eligibility to displace whatsoever. And then now, in retrospect, I think folks are trying to look at this and say, well, maybe you should have accommodated or done some sort of interactive process when the parties just didn't even get to that point when he failed to meet the requirements. I have a question for you, though. It's clear that he was unqualified for the position he sought because he was not a member of the right union. Correct. But was he qualified in the sense of actually being capable of what he was from 6 a.m. to 2 p.m.? Your Honor, I'm unclear if he was capable in the physical sense. I just don't know the answer to that. As far as was he capable in, you know, had he had experience with this job or had an idea what to do? I think in general, that's likely yes. But again, because he never got to the point where he was eligible to take over someone else's position, take over their seniority. Does that make a difference in terms of the ADA, that if a person is physically and mentally qualified to do the work and they request an accommodation, it may be an unreasonable request and an unreasonable accommodation, but it still could trigger the need for an interactive process to discuss whether it's reasonable or unreasonable. In this particular case, it's not just those two prongs, the physical and mental capability. In this prong, there is another element, which is that there is a union-protected job that he just wanted to come in, displace someone else without being a member of the union, without having an interview. I understand that. My question is whether the ADA still requires a discussion with the person if they are physically and mentally capable of performing the job, but they're not a member of the union or there's some other work rule that precludes their taking that job. No, I don't think it does. The ADA requires trying to get someone either their job with reasonable accommodations or another similar job that they could do, not a job that's entirely not open, closed off to them for other different reasons. It could be reasons that they don't have the requisite education or things like that. You don't need to bump someone. That may be true, but the approach you're taking really subverts the whole purpose of the interactive process. In other words, he applies for a job, employer, Burlington Northern says, well, he's not qualified. Well, the purpose of the interactive process is okay, you're not qualified for this, but let's sit down and talk and see what you are qualified for. And Burlington Northern never took that step, did they? They said, no, you're not qualified, out of here. No, they didn't take the step. Instead, they followed their standard policy, which was 60 days. And the question is, is that standard policy, you know, in accord with the requirements of the, you know, ADA that you have to accommodate certain things? Yes, Your Honor. That's the question. I understand and I do think that it is in accord with the ADA. I think that BNSF has applied with the ADA in all of its respects to Mr. Snapp and that this court should be affirming Judge Layton's missing Mr. Snapp's claims. I have a couple questions. So, I was a little puzzled by Mr. Snapp's argument, but let's just focus on the allegation, I guess, that's being discussed now that Mr. Snapp is arguing that your client failed to engage in an interactive process to determine what accommodations might be available for Mr. Snapp. It's a little confusing and I made a reference to this earlier because it appears Mr. Snapp didn't communicate any interest in returning to work for the BNSF after his benefits ended and he waited for a while and then waited two months after BNSF initiated contact before he communicated any interest. But let's say that's not an issue if he notified you on the night before the deadline. I'm trying to figure out what obligation, and I think that's what the questions are here, did BNSF have to engage in the interactive process and how far they should go under those circumstances, which are kind of unique, I think. And one of the issues that I have is that you repeatedly assert that BNSF merely enforced its existing return-to-work policy against Mr. Snapp. Is that correct? That's what you're saying, but you really didn't assert your existing or your normal policy because the policy gives an employee return to work 60 days to secure a new position from the date you are approved by the claims administrator to return to work based on its review of a medical release from the employee's physician. I don't think this is the policy you enforced against Mr. Snapp because you started the 60-day clock for him as soon as he sent that January 2nd, 2008 letter, and so I just want you to explain, maybe give you one more opportunity to explain why your client didn't follow its own policy, especially you repeatedly assert that it did. Your Honor, the client followed the policy by giving extra time to Mr. Snapp. Looking at the policy, you're right. It says 60 days from the time the claims administrator says you can go to work. That was back in 2005. 60 days from 2005 had long passed by the time BNSF heard anything about the disability benefits having ended and Mr. Snapp being eligible to go to work. So out of an abundance of caution, they went ahead and gave him an additional 60 days with that January letter and said, we're giving you the 60 days according to our policy, even though the policy itself doesn't require such letter. Standard practice for BNSF, and there is some testimony in the record about this, is to give a letter letting them know the 60 days. And so once BNSF knew that the disability benefits had ended, the claims administrator said, you're good to go back to work, Mr. Snapp, BNSF still gave an additional 60 days. And so they were following their policy, but being much more beneficial about it to Mr. Snapp than they really could have been. I'm happy to answer any other questions, Your Honor, if that would be helpful. I think we don't have any more. Thank you. Mr. Fisher, you may have a minute for questions if you wish. The one comment I would have is in response to the last explanation made by counsel. I don't have any recollection working in this case that there was an earlier 60 day process. I don't have any records of that. I just don't think that happened. And so in that respect, I think that the one that we do talk about is the appropriate one, the one that actually led to his severance from BNSF, and that they did absolutely no interactive process. There is nothing in the record anywhere. That would be my only comment. Thank you, counsel. We appreciate the arguments from both of you and the cases submitted. Thank you very much.
judges: Tashima, Graber, Murguia